## 15758.   McKENZIE, executor, v. FOY & SHEMWELL *et al.*

Where a petition substantially alleges that a partnership, the builder and owner of a line of wires, permitted an electric company to use the wires in the regular course of its business in transmitting electricity for pay to its regular customers, and that the wires, because of their improper construction and maintenance, which was known to both parties, came in contact, and one of them, charged with a deadly current of electricity, burned apart and fell across a public highway, and caused the death of two mules carefully driven along the highway, *held:*

1. The petition sets out a cause of action against both the partnership and the electric company, and the court erred in sustaining the general demurrer of each of them.

2. Fairly construed, the petition alleges that the death of the mules was brought about by the concurrent negligence of both defendants,—that of the partnership in improperly constructing and maintaining the line of wires, and that of the electric company in sending through the wires a deadly current of electricity, with knowledge of such improper construction and maintenance; there was no misjoinder of parties defendant; and the court erred in sustaining the electric company's demurrer for misjoinder of defendants. *Heidt* v. *So. Telephone &c. Co.*, 122 *Ga.* 474 (50 S. E. 361) ; *Bining* v. *Ga. Ry. & Elec. Co.*, 133 *Ga.* 458 (66 S. E. 237).   See also, in this connection, Lewis *v.* Bowling Green Gaslight Co., 135 Ky. 611 (117 S. E. 278, 22 L. R. A. (N. S.), 1169.

3. The court erred in sustaining grounds 4, 5, 6, 8, 9, 10, and 11 of the special demurrer of the Georgia-Alabama Power Company.   Ground 7 of this demurrer should have been met by an amendment showing "how and in what manner" the line was not "in good repair."

DECIDED NOVEMBER 12, 1924.

Action for damages; from city court of Albany—E. P. Johnston, judge pro hac vice. May 13, 1924.

*C. F. Barrett,* for plaintiff.

*Lippitt & Burt, Milner & Farkas,* for defendants.

LUKE, J. E. V. McKenzie, executor of the estate of J. W. Wooten, as plaintiff, sued Foy & Shemwell, a partnership, and Georgia-Alabama Power Company, a corporation, for damages of the killing of two mules. The defendants interposed separate demurrers, both special and general, to the petition. The court sustained the general demurrer of Foy & Shemwell, and each and every ground of the demurrer of the power company, and we are called upon to say whether or not it erred in so doing.

The petition as amended was substantially as follows: Foy & Shemwell operated, controlled, and possessed a line of wires approximately three miles long, strung over, above, and along the side of the public highway and at a distance of two feet or more from the public highway leading from Albany to Dawson; said line of wires extending from the Furr place, located on said highway, about two miles from Albany, to the Fouché place on said highway, approximately five miles from Albany. Foy & Shemwell secured the right of way for the said line of wires, and constructed the line, or had it constructed, at their expense, so that electricity might be conveyed to the said Fouché place, which was owned by them in fee simple. "Foy & Shemwell, since the construction of said line of wires in the early part of 1922, have never relinquished that control and possession of said property," and have continuously operated the same for the purpose of conveying an electric current to said Fouché place. At the time of the injury complained of, the said line of wires "was used and employed by the power company, by and with the consent of, and at the invitation and request of, Foy & Shemwell," for the purpose of transmitting electric current to said Fouché place and "points intermediate thereto." Said power company used said wires, "operated, controlled, and possessed by Foy & Shemwell," to transmit, in the ordinary course of its business and for pecuniary gain accruing to it from the sale of said current, an electric current to persons living near said highway. On December 5, 1923, one of said wires, heavily charged with electricity, fell "upon and across" said highway at a point approximately one hundred yards beyond the Furr place, in the

direction of Dawson.  On said date, while one Smith, the agent
and employee of J. W. Wooten, was proceeding "quietly, lawfully,
and carefully" along said highway in the direction of Dawson,
driving two mules, suddenly, and without warning, said mules, the
property of the estate of J. W. Wooten, came in contact with said
fallen wire lying across said highway and charged with a deadly
current of electricity, and said mules were instantly killed by said
current.  Said mules came to their death as a result of the negli-
gence of defendants.  Foy & Shemwell, "as owners, operators, con-
trollers, and possessors of said line of wires," were negligent in
failing to exercise ordinary care, in the following particulars:  (*a*)
in not inspecting said line of wires regularly, so that all defects
likely to cause said wires to fall could be detected and remedied;
(*b*) in failing to inspect said line of wires in a careful and efficient
manner, so that all defects that would cause said wires to fall across
the highway could be detected and remedied; (*c*) in that said wires
were not maintained in good repair, but were neglected and became
unsafe, and were at any time likely to fall on the highway; (*d*) in
stringing said wires in such a loose and slack manner that, being
blown by the gentlest wind, they would touch and burn apart, and
fall on said highway; (*e*) in stringing and maintaining said wires
so close together that they touched and burned apart and fell across
the highway; (*f*) in not insulating said wires so that they would
not be dangerous when they fell; and (*g*) in continuing to allow
the transmission of electricity through said wires after they knew,
or should have known by the exercise of ordinary care, that said
line of wires was in an unsafe condition.  The Georgia-Alabama
Power Company, "as user and operator of said line of wires," was
negligent, in that it failed to exercise ordinary care in the follow-
ing particulars:  (*a*) in sending over said wires a powerful electric
current without inspecting the wires, to ascertain whether it could
be safely so sent; (*b*) in sending over said wires a powerful current
of electricity, when, by the exercise of ordinary care, it should have
known that said wires were defective and unsafe, and likely to fall
across highway at any time; (*c*) in sending said current over said
wires, when, by the exercise of ordinary diligence, it should have
known that said wires were not in a condition of good repair; (*d*)
in sending over said wires said current, when it knew, or, by the
exercise of ordinary care should have known, that they had not been

inspected since their construction in the early part of 1922; (e) in sending over said line of wires said current without knowing that said line was in a safe condition; (f) in not using improved mechanical devices which would register and give notice of any breaks in the wires; and (g) in failing to repair said broken wire "in a reasonable time after it should have known said wire had broken and fallen" upon said road. By amendment it was further alleged that Foy & Shemwell were negligent: (i) in consenting to the transmission of said current over said line of wires, when they knew, or should have known, that said wires had not been inspected by any one since early in 1922; (j) in continuing to allow, and consenting to, the transmission of said current over said line after they knew, or should have known by the exercise of ordinary diligence, that said wires sagged three inches below the level at which they were originally strung, "thus enabling them to be blown together by atmospheric disturbances, although it is a well-known fact that such wires, upon coming in contact each with the other, will burn apart, and Foy & Shemwell are well aware of this;" (k) in consenting to the use of said wires for the purpose of transmitting said current after they knew, or should have known by the exercise of ordinary care, "that said wires had become so weak and worn by the ravages of time and the elements" that they were likely to fall at any time upon the highway. The Georgia-Alabama Power Company, "as user and operator of said line of wires," was, by amendment, alleged to be further negligent: (h) in sending over said line of wires a powerful current of electricity, when it knew, or should have known by the exercise of ordinary diligence, that said wires had become "so weak and worn by the ravages of time and the elements that said wires were likely at any time to fall upon said highway;" (i) in sending over said wires said current without taking measures of any kind to ascertain whether or not it could be safely so transmitted; (j) in sending said current over said wires when it knew, or should have known, from its experience in the business of transmitting current, and in the course of a year from the date of the construction of said wires, that they would need repairs, and when it knew, or should have known by the exercise of ordinary diligence, that no repairs had been made for more than a year; (l) in sending over said line of wires said current when it knew, or should have known by the exercise of

ordinary diligence, "that said wires had sagged three inches below the original level from which they were strung, so that there was a likelihood of contact between said wires, which contact would cause said wires to burn apart and fall."

The court erred, as pointed out in the headnotes, in sustaining the general and special demurrers.

*Judgment reversed. Broyles, C. J., and Bloodworth, J., concur.*